UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO.: 6-21-cr-00212 |
| | * | |
| VERSUS | * | JUDGE CAIN |
| | * | |
| JEREMIAH MICAH DEARE | * | MAGISTRATE JUDGE KAY |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT [ECF-DOC. 83]**

NOW INTO COURT comes the UNITED STATES OF AMERICA, through the undersigned Assistant United States Attorneys, who respectfully submit the following in response to Jeremiah Deare's motion to dismiss the indictment "based upon the Second Amendment" [ECF-Doc. 83]:

**I.  INTRODUCTION**

The grand jury returned a seven-count indictment charging Deare and others with making false statements with respect to licensed firearm dealer records, in violation of § 18 U.S.C. § 922(b)(5) (counts 2 –3), failure to file sales records regarding the commercial sale of firearms, in violation of 18 U.S.C. § 923(g)(3) and § 922(m) (counts 4–7), and conspiracy to engage in the business of dealing firearms without a license, in violation of 18 U.S.C. § 371 (count 1).

Deare owned Dave's Gunshop, LLC. Deare, along with his wife/co-defendant Sarah Fogle, often made off-book gun sales through record falsifications or the undocumented transfer of firearms to their unlicensed side business, run out of Deare's home. This allowed Deare to avoid placing the sales on Dave's Gunshop's

sales books (thus avoiding state/federal taxation and the effects of a judgment lien obtained by the shop's prior owner). Sidestepping these licensure/recordkeeping rules also allowed Deare and Fogle to increase their profits by selling firearms to customers who would have failed the required background check; indeed, evidence at trial will show multiple off-book sales to convicted felons.

On June 30, 2023, Deare filed a motion to dismiss the indictment. [ECF-Doc. 83.] This motion, titled "motion to dismiss the indictment based upon the Second Amendment," urged that the Supreme Court's recent decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (a case that invalidated New York state law prohibiting law-abiding citizens from ever having a gun in a public place outside a nebulous showing of "proper cause") rendered § 922(a)'s commercial licensure and record-keeping laws a violation of the Second Amendment. For the reasons set forth below, this argument lacks merit.

II.  **LAW AND ARGUMENT**

  A. **Deare's arguments fail because the commercial licensure and recordkeeping requirements do not implicate the Second Amendment's protections. These laws are concerned with only the commercial sale of firearms. They do nothing, even indirectly, to prevent a person's possession of guns as an individual right.**

As stated, Deare urges that the Supreme Court's recent decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) renders § 922(a)(1)'s commercial license/record-keeping requirements a violation of the Second Amendment, thus requiring dismissal of the indictment. To prevail on a Second Amendment claim, a defendant must show that the conduct being prosecuted (here, the commercial sale of

2

firearms without a license or adequate recordkeeping, not the possession of a gun for self-defense) falls under the Second Amendment. *See United States v. Rahimi*, 61 F.4th 443, 450 (5th Cir. 2023), *cert. granted*, ---S.Ct.---, 2023 WL 4278450 (June 30, 2023). Only once a defendant shows his conduct implicates the Second Amendment's plain text must the government "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. 2130. Wholly ignoring this first step, Deare argues—in cursory fashion and with no case law support beyond a perfunctory citation to *Bruen*—that § 922(a)(1)'s record-keeping/commercial licensure requirement is not "consistent with our nation's historical tradition of firearms regulation" and thus violates the Second Amendment. [ECF-Doc. 83-1, at 1–2.]

Deare's misguided *Bruen* argument fails for a simple reason: 18 U.S.C. § 922(a)(1)'s licensure/record-keeping requirements do nothing to limit Deare's (or anyone else's) ability to "keep and bear" firearms; instead, § 922(a)(1) is, at most, a modest regulation of the commercial activity of selling/transferring firearms to others. The Supreme Court has long stated that commercial regulations do not implicate the Second Amendment's protections. *See District of Columbia v. Heller*, 554 U.S. 570, 626–27 (2008) (holding unconstitutional D.C. law that prohibited people from keeping certain guns in their homes but stating that "nothing in our opinion should be taken to cast doubt on longstanding . . . conditions and qualifications on the commercial sale of arms."). *Bruen* did not overrule this precedent; in fact, it buttressed it. *See Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring, joined by C.J.

3

Roberts) (expressly stating that nothing in *Bruen* prohibits "conditions and qualifications on the commercial sale of arms").

Relying on this long-standing precedent, as well as the common-sense conclusion that mere business licensure requirements do not affect a person's right to "keep and bear" firearms, district courts have rejected arguments like those in Deare's motion. *See, e.g., United States v. Flores*, --- F. Supp. 3d, 2023 WL 361868, at * 3 (Jan. 23, 2023) (rejecting argument that federal firearms dealer licensure requirement violated the Second Amendment, reasoning "around the time of the founding, 'the most natural reading of 'keep Arms' in the Second Amendment is to 'have weapons' , , , [and] to 'bear' meant to 'carry." Defendant does not explain how selling guns at wholesale or retail fits within either meaning." (quoting *Bruen*, 142 S. Ct. at 2191–92)); *see also id.* at *2 (noting *Heller* and *Bruen*'s dicta that the opinions did not intend to call into question the regulation of commercial activity, as opposed to the induvial right to "keep and bear" firearms).[1]

Deare offers nothing to explain how the licensure/recordkeeping requirements—again, laws that merely regulate commercial activity, and do not even purport to restrict who can buy a firearm—implicate the Second Amendment's plain text. Thus, his argument fails without a need to reference the "historical tradition" of firearms sale regulation.

---

[1] Indeed, Deare cannot even argue that the federal licensure and record keeping requirements affect his customers' right to possess firearms (the way, for example, § 922(d)(1)'s prohibition against transferring a gun to a person under indictment might). The licensure requirement at issue here affects the seller alone and does nothing to prevent non-commercial activity with a firearm, even indirectly.

B. **In the alternative, there is a "historical tradition" of regulating firearm sales and transfers dating back to the "Founding" period.**

But even if Deare could somehow show that the modest commercial regulations affected his Second Amendment rights, this Court should still deny the motion to dismiss. This is because, Deare's unsupported claims to the contrary, there was ample practice of restricting the sale or transfer of firearms at the time of the United States' founding. *See Teixeira v. County of Almeda*, 873 F.3d 670, 684–85 (9th Cir. 2017) ("Governmental involvement in the provision, storage, and sale of arms and gunpowder is consistent with the purpose of maintaining an armed militia capable of defending the colonies. That purpose was later expressly recognized in the prefatory clause to the Second Amendment."); *see also id.* ("Notably, colonial government regulation included some restrictions on the commercial sale of firearms. . . . Massachusetts, Connecticut, Maryland, and Virginia all passed laws in the first half of the seventeenth century making it a crime to sell, give, or otherwise deliver firearms or ammunition to Indians . . . Connecticut banned the sale of firearms by its residents outside the colony.").[2]

---

[2] Indeed, American criminal laws regulating the transfer of firearms are as old as the first permanent English colony, Jamestown. *See* Robert Spitzer, *Gun Law History in the United States and the Second Amendment Rights*, 80 Law & Contemp. Probs. 55, 57 (2017) ("The first General Assembly of Virginia met in Jamestown where it deliberated for five days and enacted a series of measures to govern the fledgling colony. Among its more than thirty enactments in those few days was a gun control law, which said '[t]hat no man do sell or give any Indians any piece, shot, or powder, or any other arms offensive or defensive, upon pain of being held a traitor to the colony and of being hanged as soon as the fact is proved, without all redemption.'").

Although some of these transfer/sale restrictions are unconstitutional today for reasons that have nothing to do with the Second Amendment, their prevalence among the colonial legislatures shows that, at the time of the Constitution's drafting, there was a long-existing "historical tradition" of regulating firearms' sales and transfers. Put differently, that the common understanding at the time of the founding was that the government had the authority to outright bar some commercial firearms transfers shows that it does not offend the Second Amendment to impose comparatively modest licensure and recordkeeping requirements on commercial firearms dealers, none of which affects an individual "law-abiding citizen's" ability to own a gun. *See Bruen*, 142 S. Ct. at 2133 (emphasizing that the government need only identify a "historical analogue, not a historical twin" to overcome *Bruen*'s "historical tradition" analysis); *see also Teixeira*, 873 F.3d at 686 ("[N]o contemporary commentary [such as *Blackstone's*] suggests that the right codified in the Second Amendment independently created a commercial entitlement to sell guns if the right of the people to obtain and bear arms was not compromised.").

### III.  CONCLUSION

Deare's motion to dismiss fails because § 922(a)'s licensure/record requirements have no effect on anyone's ability to "keep or bear" firearms, and thus do not implicate the Second Amendment's plain text. Even if the simple regulation of commercial activity did somehow implicate the Second Amendment, however, Deare's motion fails because there is a historical tradition, going back to the period of the founding, of regulating firearms sales and transfers. Accordingly, the government respectfully requests that this Court deny Deare's motion to dismiss.

        Respectfully submitted,

        BRANDON B. BROWN
        United States Attorney

By:    *s/Lauren L. Gardner*
        MYERS P. NAMIE (LA Bar No. 29359)
        LAUREN L. GARDNER (LA Bar No. 30595)
        Assistant United States Attorneys
        800 Lafayette Street, Suite 2200
        Lafayette, LA 70501
        (337) 262-6618