UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 6:21-CR-00212-01** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **JEREMIAH MICAH DEARE (01)**<br>**SARAH ELAINE FOGLE**<br>**DAVES GUNSHOP, LLC** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING AND ORDER

Before the Court is a "Motion to Dismiss Indictment Based Upon the Second Amendment" (Doc. 83) filed by counsel for Defendant Jeremiah Deare. Pursuant to the Court's Order, Defendant Sarah Fogle was permitted to adopt Deare's Motion and thus this Ruling will also be considered as a Motion filed by Fogle.[1]

## INTRODUCTION

Defendant Deare owned Dave's Gunshop, LLC ("Dave's). Deare and his wife, Co-Defendant, Sarah Fogle, and Dave's Gunshop, LLC were indicted in a seven-count indictment for making false statements with respect to licensed firearm dealer records, in violation of 18 U.S.C. § 922(b)(5) (Counts 2-3), failure to file sales records regarding the commercial sales of firearms, in violation of 18 U.S.C. § 923(g)(3) and § 922(m) (Counts

---

[1] Doc. 105.

4-7), and conspiracy to engage in the business of dealing firearms without a license, in violation of 18 U.S.C. § 371 (Count 1).

The Indictment states that Dear and Fogle often made off-book gun sales through record falsifications or the undocumented transfer of firearms to their unlicensed side business, which was run out of Deare's home. These transactions allowed Deare to avoid documenting and/or recording these sales on Dave's sales books, which in turn, avoided the payment of state and/or federal taxes and the effects of a judgment lien obtained by the shop's prior owner. Additionally, failing to properly record these sales and sidestepping rules regarding these sales transactions allowed Deare and Fogle to increase their profits by selling firearms to customers who would have failed the required background check.

## LAW AND ANALYSIS

Deare and Fogle have filed the instant Motion to Dismiss the Indictment based on the Second Amendment. Defendant maintains that the charges contained in Counts 2-7 run afoul of the Second Amendment. Counts 2-7 involve Defendants willfully selling and delivering firearms in violation of 18 U.S.C. §§ 922(b)(5) and 924(a)(1)(D) (False Statement with Respect to Records of Licensed Firearms Dealer).

The Indictment charges Deare, a licensed firearm dealer, and Fogle with

- selling firearms but failing to properly record in the records of Dave's information required to be kept by law pursuant to Title 18, United States Code, § 923 (name, age, and place of residence);[2]

- Deare made a false entry in a record that Dave's, a licensed firearms dealer, was required to keep under Chapter 44 of Title 18;[3]

- Dave's, a licensed dealer of firearms, knowingly failed to maintain records Defendant was required to keep pursuant to Title 18, United States Code, § 923(g)(3)(A) by failing to report the multiple sale of handguns to certain purchasers in violation of Title 18, United States Code, § § 922(m) and 924(a)(3)(B).[4]

Defendants maintain that the above stated regulations are not consistent with our nation's historic tradition of firearms regulation citing *N.Y. State Rifle & Pistol Ass'n v Bruen,* 142 S.Ct. 2111 (2022). In other words, Defendants contend that commercial licensure and providing the government with the name and address of every gun owner and the identification of their weapons in "inconsistent with maintaining a well-regulated militia."[5]

---

[2] Count 2, Doc. 1
[3] Count 3, Doc. 1.
[4] Counts 4 and 5, Doc. 1.
[5] Doc. 83, p. 2.

To prevail on a Second Amendment claim, a defendant must show that the conduct being prosecuted—the commercial sale of firearms without a license or adequate recordkeeping—falls under the Second Amendment. See *United States v. Rahimi*, 61 F.4th 443, 450 (5th Cir. 2023), *cert. granted*, __S.Ct.)__, 2023 WL 4278450 (June 30, 2023). After a defendant shows his conduct implicates the Second Amendment's plain text, the government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S.Ct. 2130.

The government argues that the licensure/record-keeping requirements of 18 U.S.C. § 922(a)(1) do nothing to limit Defendants' ability to "keep and bear" firearms. But, at best, § 922(a)(1) is a modest regulation of the commercial activity of selling/transferring firearms to others. See *District of Columbia v. Heller*, 554 U.S. 570, 626-7 (2008) (holding unconstitutional D.C. law that prohibited people from keeping certain guns in their homes but stating that "nothing in our opinion should be taken to cast doubt on longstanding . . . conditions and qualifications on the commercial sale of arms."). See also *United States v. Flores*, 2023 WL 361868, at *3 (Jan. 23, 2023) (rejecting argument that federal firearms dealer licensure requirement violated the Second Amendment, reasoning "around the time of the founding, 'the most natural reading of 'keep Arms' in the Second Amendment is to 'have weapons' ... [and] to 'bear' meant to 'carry'").

The Court agrees with the government that federal licensure and record keeping requirements do not affect an individual's rights to possess firearms. Moreover, these requirements affect only the seller. As such, Defendants have failed to persuade this Court that these commercial licensure and recordkeeping requirements implicate the Second Amendment.

Despite having concluded that the Second Amendment is not implicated, the Court further agrees with the Government that there is "historical tradition" of regulating firearm sales that dates back to the "Founding" period. The Government shows that there was ample practice of restricting the sale or transfer of firearms at the time of the United States' founding. See *Teixeira v. County of Almeda*, 873 F.3d 670, 384-85 (9th Cir. 2017) ("Governmental involvement in the provision, storage, and sale of arms and gun powder is consistent with the purpose of maintaining an armed militia capable of defending the colonies. That purpose was later expressly recognized in the prefatory clause to the Second Amendmebt."); see also *id.* ("Notably, colonial government regulation included some restrictions on the commercial sale of firearms. . . . Massachusetts, Connecticut, Maryland, and Virginia all passed laws in the first half of the seventeenth century making it a crime to sell, give, or otherwise deliver firearms or ammunition to Indians . . . Connecticut banned the sale of firearms by its residents outside the colony." ) American criminal laws regulating the transfer of firearms are as old as the first permanent English colony, Jamestown. *See* Robert Spitzer, *Gun Law History in the United States and the Second*

*Amendment Rights*, 80 Law & Contemp. Probs. 55, 57 (2017) ("The first General Assembly of Virginia met in Jamestown where it deliberated for five days and enacted a series of measures to govern the fledgling colony. Among its more than thirty enactments in those few days was a gun control law, which said '[t]hat no man do sell or give any Indians any piece, shot, or powder, or any other arms offensive or defensive, upon pain of being held a traitor to the colony and of being hanged as soon as the fact is proved, without all redemption.'").

All things considered, this Nation has a historical tradition of firearm regulation.

## CONCLUSION

Considering the foregoing, the Court finds that Defendants' arguments that the commercial licensure and recordkeeping requirements violate the Second Amendment are without merit. Accordingly,

**IT IS ORDERED** that the Motion to Dismiss Indictment Based Upon the Second Amendment" (Doc. 83) filed by counsel for Defendant Jeremiah Deare and adopted by Sarah Fogle are **DENIED.**

**THUS DONE AND SIGNED** in Chambers on this 24th day of July, 2023.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**